The next case up for oral argument is Epaul v. Ferrell. Counsel, whenever you're ready, you may proceed. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court, Counsel. This case poses a stark question. Is it plain error, under the second prong of the plain error test, for a prosecutor to invent a fact in closing argument, literally putting words in the defendant's mouth that he never uttered, that falsely attributes a racist motive to him? In other words, is such a transgression by its very nature, sufficiently egregious and beyond the pale, that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process regardless of the closeness of the evidence, which is the second prong test? That's the long and the short of it in this case, and the answer is yes. In a nutshell, this Court in the Marshall case and other districts of the appellate court have appropriately taken a zero-tolerance approach to the injection of race-based bias, prejudice, or sentiment into a trial where there is no evidence that the race of the parties or witnesses played a role in the case. As presented in our briefs, that is the overarching message of the appellate court in the Turner case, Richardson, Brown, and Marshall. And at a time when emotionally charged issues of racial divisiveness continues to permeate American culture, mass media, politics, and everyday lives, inevitably affecting jurors, that is the right message to deliver to our circuit courts and to trial attorneys on both sides of the divide. When did it first come up, counsel, in the trial? In closing argument. During the actual evidence in the case, there was not one whit of a suggestion that race played any role in this case whatsoever. It wasn't mentioned by any of the witnesses, none of the exhibits, nothing. And yet, in closing argument, out of the blue, the prosecutor says that Mr. Farrell, the defendant, was going to get that white man just before he allegedly entered the apartment and committed a battery of the victim, Coddington. Now, of the cases that I've cited, none of them poses exactly the same question. Of course, there were different facts. But they collectively guide us to that conclusion regarding second-pronged plain error here. Probably the case that comes the closest was the People v. Turner case. And that was the case where a prosecutor, in closing argument, made up a couple of quotes that attributed a racist motive to one of the defense witnesses. Here, it's only a single quote, and I know the state has emphasized it. It was only one mentioned in closing argument. But it was attributed not to a witness but to the defendant himself, attributing a racist motive where none previously had even existed. So it did two things. There weren't as many transgressions as in the Marshall-Richardson or Turner cases, but the transgression was more severe. It was more serious because it did two things. One, it basically made out the defendant to be a racist. And secondly, it provided him with a brand-new motive that was nowhere found in the evidence. And, in fact, the evidence trial motive was kind of weak. At best, there was an inference of a possible motive that was kind of strained. Prosecutors solved that problem by making up a quote in closing argument that attributed a motive to this defendant. The other case I would highlight here, I'm sure this court is familiar with the Marshall case, the pseudo-sociology of the prosecutor in that case, and similar with Richardson. But in the Brown case, that was the case where the prosecutor made what was arguably possibly an innocuous reference. It was actually a true statement. That was the one where the prosecutor said, every single person in this society is entitled to the same protection of law, whether they're white or black. It wasn't a false statement, but it was gratuitous, and it needlessly injected race into it. And in that case, the second district of this court said even that was too much. You cannot gratuitously inject race in closing argument where there's nothing to support in the actual case and the actual evidence. What happened in the case of Barr was obviously much more serious. Now, I know the state also points to the Johnson case, People v. Johnson, in that they rely on it pretty heavily, which I suppose, number one, I think would have to be reconciled with Marshall. In Marshall, this court said that even a single reference, gratuitous reference to race, would have been too much, would have caused a plain error. But in that case, there was no issue of the prosecution manufacturing facts. We do have that in this case. There is a huge difference between a prosecutor making an offhanded but factual reference to someone's race, as in Johnson, and making up a fact that cast the defendant as a racist, which is what happened in the case of Barr. So, for that reason, I don't, I don't believe, we can clearly distinguish Johnson, and I don't think it really is of much moment in this case in helping this court resolve what is before it. The only other thing I would mention briefly, we do raise an alternative argument of ineffective assistance of counsel because, well, abrogastically, the counsel didn't object to this statement, even though there was no evidence of race in the actual trial itself, and defense counsel remained silent. The point I would highlight about that is that that actually accentuated the error here because defense counsel, prior to that point, and even after that point, during rebuttal, they objected to something else the prosecutor said. Defense counsel was not reticent about raising objections. Therefore, their silence must have reinforced the suggestion that had been planted in the minds of the jurors that, gee, maybe we missed something. Maybe, maybe I was tapping in and I missed the statement the defendant said about getting that white man. Because they were silent. And that would be the only additional point I would make with respect to ineffective assistance of counsel. I would submit this court doesn't need to get there because I think we have shown second-plane error by following and hewing to the zero-tolerance line established in Turner, Richardson, Brown, and Marshall. And if the court has no other questions, I'll reserve my time for rebuttal. I don't believe we do. Thank you, counsel. Thank you. Counsel? May it please the court? My name is Sharon Shanahan, and I represent the people of the state of Illinois. The first thing I want to mention is the actual statement in question. This is what the prosecutor said. He said that the defendant, buoyed by false courage, decided to, and here I quote, get that white man. It wasn't right. Or something to that effect. I ask you to draw on your recollection of what he said. I'm reading in quotation marks in the defendant's brief, and it says the statement was, quote, he started walking towards Joe Coddington's apartment door saying, I'm going to get that white man, close quote. Is that accurate? If you stop there, yes. That part's accurate, though. Yes. Okay, because I didn't hear you say the part about he started walking towards the apartment door saying those words. My quotation started after the words. Here's the entire paragraph. What does the defendant do? Well, he starts walking towards, he's had a couple cans of false courage. He starts walking towards Joe Coddington's apartment door saying, I'm going to get that white man. It wasn't right. Or something to that effect. I ask you to draw on your recollection of what he said. But it was something he was brewing or stewing inside of him that he needed alcohol to let it fester out.  That's the sentence. So, excuse me. So the two very important things about this is that the prosecutor did attribute to the defendant this statement, I'm going to get that white man. But he immediately qualifies it. Or something like that. He said something to that effect. So how does that make it less of an attribution of a racist motive? It wasn't right. Or something to that effect. I ask you to draw on your recollection of what he said. So that's suggesting to the jury that he did say something to that effect. Yes. And let's look at, what this deals with is a simple misrecollection by a prosecutor. You agree there was no evidence of this type presented, correct? Correct. And I also would note that we're reading a cold record. The word white, as opposed to the words in Turner, whitey and blacky, in itself has no racial connotation. I would point out, for example, that Michael Jackson, when he was testifying, he said that he recalled the defendant saying, I'm going to whip that man's ass. If the prosecutor had said that, then there would have been no error. To attribute such an extreme racial connotation to one word, based not on a racial motive, but simply a misrecollection of the evidence, I mean, let's... Well, just a minute. I mean, you don't agree that this is attributing a racial motive to the crime? Not when you look at all the other evidence. No, I don't. For the prosecutor to say that he went down the hall saying, I'm going to, whatever, whip that white man. And it's obvious the defendant's African American. Yes. How is this different than Johnson? I mean, in Johnson, here's what the prosecutor said. The prosecutor said that this witness was left alive so that she could finger that black man that slaughtered her boyfriend. I mean, that, that's tough. I think that's, when you compare that statement to, I'm going to whip that white man. And here's something that the defendant is incorrect about. He says that the prosecutor invented evidence. Well, you know, quite honestly, in all of these cases, in Marshall, in Richardson, in Turner, in Brown, and in Johnson, the prosecutor is inventing evidence because that's the whole point. They're talking about things that weren't in the record. Listen to this quote from page 198 of Johnson. The prosecutor's comment was expressing an opinion on a matter not relating to the evidence. So that's exactly what's happening in Johnson, which is an Illinois Supreme Court case. And we've got a prosecutor who is saying that he thinks, his personal opinion, that this witness was left alive so that she could finger that black man that slaughtered her boyfriend. Now, here's another thing that I think is interesting about defendants. I'm sorry, have I answered your question? Yes. Have we agreed to this debate? You're right. Yes. To the extent, well, never mind. But go ahead. I know you have other questions. Well, I have a question. Well, that's what I'm here for. If you write the briefs, I'll answer the questions. You indicated in your brief that the phrase was intemperate and improper. Would you explain what you mean by that? Well, I have to say that I've had to accept that phrase because the Supreme Court has said that any mention of race in opposing argument is intemperate and improper. There are, there's cases out there where all, I believe it's Brown, where it's just a matter of saying that the person was, you're entitled to this whether you're black or white, I think is what Brown said. Are you suggesting that this is as neutral as that case in this statement? Yes, Your Honor, I think so. I want to point out something else that's very important about Brown that the defendant has overlooked, and that is there's nothing in Brown that says that they reversed on that basis. It said it was improper. That's all it said. Brown reversed because they were improperly admitted hearsay. They said it was improper. That's it. They didn't, there's nothing where this line in the sand is drawn that just because you said that word, it's a reversible error. I have to accept the law of this land, which says that any mention in closing argument, which says anything about the race of someone is wrong. Do you agree with Mr. Whitten when he stated that there was no evidence to that effect in the record about that statement? The closest I found in the record to that statement was the one that I just read to you by witness Michael Jackson, who said that he heard the defendant say, I'm going to whip that man's ass. And there's no reference to race there? No, there is not. There is not. But I want to take a look at the, oh, you said you had. I actually, Justice Moore, brought up part of my question. Johnson, you're talking about injecting race in a characterization of the testimony that was heard before the jury. Is that correct? Can you ask that question again? Okay, yeah. The part of Johnson that we're talking about essentially was a characterization of testimony the jury had heard. In this case, this was proffered by the state's attorney in closing argument as an actual fact. Isn't that a substantial, qualitative, and determinative difference? Well, the Supreme Court describes the evidence in Johnson as expressing an opinion on a matter not relating to the evidence. And that's exactly what happened here. Is that the? No, I mean in here, this was offered to the jury as the state's attorney's argument and recollection of an actual fact, an existing statement, not his characterization of that statement. Is that correct? Which is immediately qualified, telling the jury to rely on their own recollection. There's no question it was qualified by the next sentence. Next two sentences. But it was the base that I'm focusing on is it was offered as a matter of fact, a matter in evidence in the record.   But I believe that examination of the entire record in this case indicates this is not a racially motivated statement. It is simply a misrecollection of the facts. I don't think we have any further questions. Thank you. Thank you, counsel. Counsel? Very briefly, Your Honors. First of all, I would agree with Justice Stewart that saying he said this or something to that effect is not backtracking from it. It's emphasizing it. It's saying, well, I may not have the quote exactly right, but he said, I'm paraphrasing it. So I don't think that that really salvages the situation here for the state. Secondly, counsel argued that this was simply a misrecollection. Well, we don't know that. It might have been. It might have been deliberate. We don't know. All we know is that it happened and it wasn't supported by the evidence. The third thing with respect to Johnson is, yes, there was a statement made by the prosecutor that went beyond the evidence, but it was not an affirmative misstatement of the evidence like we have here. What the defendant was complaining about in Johnson was not even in reference to that black man, but the statement that were made before where the prosecutor was waxing metaphysical, saying, well, this witness lived in order to identify that black man, as if there was divine intervention in the case. Well, that's certainly going beyond the evidence, but it's not an affirmative misstatement of fact like you have in this case. And I think that's one of the other things, in addition to the severity of what transpired here, that clearly distinguishes the case of Barr from Johnson. And with that, if there are no other questions, I think we can conclude. I don't believe there are. Thank you, counsel. Thank you, Your Honor. We appreciate the briefs and arguments of counsel and will take the case under advisement.